PER CURIAM.
J.A.F. petitions the Court for review of the recommendation of the Florida Board of Bar Examiners that his application for admission to The Florida Bar be denied. We have jurisdiction pursuant to article V, section 15 of the Florida Constitution.
J.A.F. graduated from law school and passed the Florida Bar Examination in February of 1988. After an extensive investigation, the Board of Bar Examiners found that J.A.F. has engaged in a course of conduct evidencing a lack of respect for the laws of this country and the rights of others, as well as a lack of truthfulness and candor in dealings with the Board. The Board has recommended that J.A.F. not be admitted to the Florida Bar. This recommendation was based on findings that the following specifications had been proven:[1]
(1)J.A.F. failed to pay in a timely manner his assessed federal income taxes for tax years 1969, 1970, and 1971. He also failed to file tax returns in a timely manner for tax years 1983 through 1986. J.A.F. has an outstanding obligation for unpaid taxes in excess of $13,000.
(2) During the closing on a sale of property in 1985, J.A.F. misrepresented that a $2,000 mortgage on his property had been satisfied. After J.A.F. refused to pay the outstanding note despite demands by the title insurance company, legal action was commenced. This suit resulted in a stipulated final judgment which has remained unsatisfied.
(3) Since 1978, J.A.F. has conducted his financial affairs in an irresponsible manner, as evidenced by the following: his dealings with creditors which have resulted in the making of unsatisfactory payments and/or the incurring of delinquent accounts; his failure to maintain adequate records of his outstanding credit obligations; his attempt to compromise his unsatisfied judgment for the unpaid mortgage despite the absence of a reasonable basis for doing so; and his failure to enter into acceptable repayment agreements with his creditors. Despite these financial difficulties, he has expended funds for excessive or nonessential items such as a car phone and a beeper.
(5) J.A.F. submitted two written statements to the Board which were false, misleading, or lacking in candor. In the first, he submitted a letter wherein he stated that he withdrew his Chapter 13 bankruptcy petition, as he believed that the elimination of his debts through bankruptcy was not the honorable thing to do. The second statement was made in a sworn amendment to his bar application, in which J.A.F. again stated that he voluntarily withdrew his bankruptcy petition. In fact, bankruptcy was withdrawn on the motion of a secured creditor wishing to commence foreclosure proceedings because J.A.F. failed to make the required payments under the Debtor’s Plan. In addition, J.A.F. stated in his amendment that he sold his house and paid off his debts after withdrawing the *1311 bankruptcy, when in fact all of the unsecured creditors listed in the bankruptcy pleadings remained unpaid.
(6) J.A.F. made false and misleading statements relating to his activities as a filmmaker in California. While J.A.F. stated that his films involved nudity and simulated sex, in fact they involved scenes of actual oral copulation. In addition, J.A.F. failed to disclose the nature of items seized from his apartment at the time of his arrest for “conspiracy to commit sexual perversion (oral copulation).” (This charge was later dismissed.) The items seized included suggestive film title posters, films depicting acts of oral copulation, hard-core shooting scripts, receipts and correspondence related to the production and distribution of hard-core motion pictures, two revolvers, and a Hi/Lo Scanner capable of picking up all police radio frequencies.
(7) J.A.F. submitted inconsistent and contradictory sworn statements regarding his involvement in the production of films in California. For example, in one sworn amendment to his bar application he stated that he “produced, directed or owned approximately fifteen motion pictures.” In a subsequent amendment, he stated that he did not know if any of the films that he shot were ever completed and released as motion pictures. Finally, in his sworn testimony at the formal hearing he specifically admitted that he had never produced, directed, or owned fifteen motion pictures. He explained his earlier statement as “puffing” the description of his involvement in the production process.[2]
Despite J.A.F.’s arguments to the contrary, we conclude that the Board’s findings are supported by competent and substantial evidence and that such findings are sufficient to justify nonadmission to the Bar. While J.A.F. did present several witnesses who testified to his good character and excellent work habits and strongly recommended his admission to the Bar, we further agree with the Board that this evidence is insufficient to demonstrate rehabilitation in light of J.A.F.’s ongoing financial irresponsibility and lack of candor. We therefore approve the Board's findings and recommendation and deny J.A.F.’s petition for admission to The Florida Bar.
It is so ordered.
SHAW, C.J., and OVERTON, MCDONALD, GRIMES and HARDING, JJ., concur.
BARKETT and KOGAN, JJ., concur in result only.

. In specification (4), J.A.F. was accused of falsifying time sheets while employed as a law clerk in 1986-87. The Board found that the evidence in support of this allegation was insufficient.

. The Board also found that J.A.F. is an insulin-requiring diabetic, which led to his arrest for trespassing and resisting arrest without violence in March of 1990. J.A.F. defended against the criminal charges by alleging that he was suffering from an insulin reaction at the time of his arrest. The Board went on to find that J.A.F. has sufficient knowledge of his diabetic condition and the means to control it, and that his condition is not disqualifying for the practice of law.